UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MATTHEW C. KURTENBACH, a/k/a MATTHEW KURTENBACH, | CIV. 16-5021-JLV |
| Plaintiff, | ORDER |
| vs. | |
| SOUTH DAKOTA ATTORNEY GENERAL MARTIN JACKLEY, SOUTH DAKOTA SECRETARY OF CORRECTIONS DENNY KAEMINGK, LINDSAY QUASNEY, JOHN WENANDE and DOUG CLARK, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Matthew Kurtenbach sues the above-captioned defendants alleging various claims under 42 U.S.C. § 1983. (Docket 15). The defendants filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Docket 23). Plaintiff resists in part and agrees in part to defendants' motion. (Docket 31). For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

## ANALYSIS

Plaintiff's amended complaint contains seven claims against the defendants. Those claims are:

Count 1: Using phony "subpoenas" to subvert constitutional protections. (Docket 15 at p. 3) (capitalization, bold and parentheses omitted);

Count 2:    Unfettered state surveillance of individuals' pharmacy records.   <u>Id.</u> at p. 6 (capitalization, bold and parentheses omitted);

Count 3:    Increasing criminal sentences on the basis of facts neither admitted nor found by a jury.   <u>Id.</u> at p. 8 (capitalization, bold and parentheses omitted);

Count 4:    Jailing of parolees without a proper basis.   <u>Id.</u> at p. 10 (capitalization, bold and parentheses omitted);

Count 5:    Unauthorized revocation of parole.   <u>Id.</u> at p. 13 (capitalization, bold and parentheses omitted);

Count 6:    Delayed and denied preliminary revocation hearing. <u>Id.</u> at p. 15 (capitalization, bold and parentheses omitted); and

Count 7:    Retaliation for seeking a parole board meeting.   <u>Id.</u> at p. 17 (capitalization, bold and parentheses omitted).

Defendants' motion to dismiss the entirety of the amended complaint is premised on Fed. R. Civ. P. 12(b)(6).   (Docket 23).   In the alternative, defendants ask the court to dismiss the official capacity claims against Attorney General Martin Jackley ("Attorney General Jackley") and South Dakota Secretary of Corrections Denny Kaemingk ("Secretary Kaemingk") and the individual, personal capacity claims against defendants Ms. Quasney, Mr. Wenande and Mr. Clark.   <u>Id.</u>

In response to defendants' motion to dismiss, Mr. Kurtenbach does not object to the dismissal of count 3.   (Docket 31 at p. 31).   Defendants' motion to dismiss count 3 will be granted.

Mr. Kurtenbach acknowledges count 5 is barred by the Heck[1] doctrine, but asks the court to abstain from ruling on this cause of action until the underlying state court habeas proceeding is resolved.   Id. at p. 35.   The court will address count 5 as part of its analysis of defendants' motion to dismiss.

Rule 12(b)(6) provides for dismissal if the plaintiff fails to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).   In evaluating the defendants' Rule 12(b)(6) motion, the court accepts as true all of the factual allegations contained in plaintiff's complaint and grants all reasonable inferences in favor of plaintiff as the nonmoving party.   Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (citing Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).   See also Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009) (the court must review "a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the facts alleged in the complaint as true and granting all reasonable inferences in favor of the plaintiff, the nonmoving party.") (brackets omitted).   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"   Bell Atlantic Corp. v. Twombly,

---

[1]Heck v. Humphrey, 512 U.S. 477 (1994).

550 U.S. 544, 555 (2007) (citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679.

"When ruling on a motion to dismiss under Rules 12(b)(6) . . . a district court generally may not consider materials outside the pleadings. . . . . It may, however, consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." Noble Systems Corp. v. Alorica Central, LLC, 543 F.3d 978, 982 (8th Cir. 2008) (internal citation and quotation marks omitted). The court may also consider matters in the public record of which the court may take judicial notice. Tellabs, Inc. v. Makor Issues and Rights, LTD., 551 U.S. 308, 322 (2007). "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).

The Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "Section 1983 does not confer subject matter jurisdiction. The statute simply provides a means through which a claimant may seek a remedy in federal court for a constitutional tort when one is aggrieved by the act

of a person acting under color of state law." <u>Jones v. United States</u>, 16 F.3d 979, 981 (8th Cir. 1994).

"The district court [is] required to evaluate [each defendant's] conduct individually. . . . Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. . . . Section 1983 does not sanction tort by association." <u>Heartland Academy Community Church v. Waddle</u>, 595 F.3d 798, 805-06 (8th Cir. 2010) (internal citations omitted).

Mr. Kurtenbach asserts claims against Attorney General Jackley in his official capacity seeking declaratory and injunctive relief. (Docket 15 ¶ 33(b) [count 1]; ¶ 47(b) [count 2]; ¶ 72(b) [count 4]; ¶ 85(b) [count 5]; ¶ 93(b) [count 6]; and ¶ 103(b) [count 7]). Mr. Kurtenbach makes no personal capacity claims against Attorney General Jackley.

The amended complaint asserts claims against Secretary Kaemingk in his official capacity seeking declaratory and injunctive relief. (Docket 15 ¶ 47(b) [count 2]; ¶ 72(b) [count 4]; ¶ 85(b) [count 5]; ¶ 93(b) [count 6]; and ¶ 103(b) [count 7]). Mr. Kurtenbach makes no personal capacity claims against Secretary Kaemingk.

Mr. Kurtenbach asserts one claim against Assistant Attorney General Lindsey Qausney ("AAG Quasney") in both her official and personal capacities seeking money damages and injunctive relief. (Docket 15 ¶ 33(a) [count 1]). Plaintiff asserts two claims against South Dakota Division of Criminal

Investigation Agent Wenande ("Agent Wenande") in both his official and personal capacities seeking money damages and injunctive relief. (Docket 15 ¶ 47(a) [count 2]; and ¶ 72(a) [count 4]).

The amended complaint asserts three claims against South Dakota Board of Pardons and Paroles Director Clark ("Director Clark"), in both his official and personal capacities, seeking money damages and injunctive relief. (Docket 15 ¶ 85(a) [count 5]; ¶ 93(a) [count 6] and ¶ 103(a) [count 7]).

OFFICIAL CAPACITY CLAIMS

Before addressing plaintiff's claims against the defendants in their individual capacities, the court addresses Mr. Kurtenbach's claims against the defendants in their official capacities. "The Eleventh Amendment generally bars suits for damages against a state or state officials in their official capacities unless the state waives its sovereign immunity." Christensen v. Quinn, 45 F. Supp. 3d 1043, 1059 (D.S.D. 2014), reconsideration denied, Civ. No. 10-4128, 2014 WL 6471378 (D.S.D. Nov. 18, 2014) (citing Will v. Mich. Department of State Police, 491 U.S. 58, 66 (1989)). "A suit against a public employee in his or her official capacity is merely a suit against the public employer." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). "Furthermore, neither a state nor its officials acting in their official capacities are 'persons' who may be sued for money damages under § 1983." Christensen, 45 F. Supp. 3d at 1059 (citing Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613,

617 (2002)).   Finally, "respondeat superior or vicarious liability will not attach

under § 1983."   <u>Rutan v. State of South Dakota</u>, No. CIV. 05-4070, 2005 WL

1398596, at *3 (D.S.D. June 14, 2005) (citing <u>Shrum ex rel. Kelly v. Kluck</u>, 249

F.3d 773, 778 (8th Cir. 2001)).

Declaratory and prospective injunctive relief are available as remedies

against a state officer in his official capacity.   <u>Pulliam v. Allen</u>, 466 U.S. 522,

541 (1984).   Immunities, i.e., absolute, prosecutorial or qualified immunity are

not a bar "to plaintiff's action for injunctive and declaratory relief under Section

1983."   <u>Timmerman v. Brown</u>, 528 F.2d 811, 814 (4th Cir. 1975).

In so far as Mr. Kurtenbach alleges defendants, AAG Quasney, Agent

Wenande and Director Clark, violated his constitutional rights in their official

capacities, the court finds the § 1983 claims for money damages are actually

claims against the State of South Dakota.   <u>Johnson</u>, 172 F.3d at 535.

Accordingly, Mr. Kurtenbach's 1983 claims for money damages against the

defendants in their official capacities are dismissed.

The court will now address each of plaintiff's remaining claims.

### COUNT 1:   USING PHONY "SUBPOENAS" TO SUBVERT CONSTITUTIONAL PROTECTIONS

For purposes of resolution of defendants' Rule 12(b)(6) motion, the court

accepts as true the factual allegations contained in the amended complaint and

all reasonable inferences in favor of plaintiff.   <u>Braden</u>, 588 F.3d at 594.   In

December 2013, Mr. Kurtenbach was on parole through the South Dakota

Department of Corrections.   (Docket 15 ¶ 14).   Mr. Kurtenbach signed a
Community Supervision Agreement.   Id.; see also Docket 25-1 pp. 2-3.   In early
January 2014, Nathan Hower, Mr. Kurtenbach's parole officer, suspected he was
attempting to obtain prescription narcotics illegally.   (Dockets 15 ¶ 17 & 15-2 at
p. 2).   Parole Officer Hower's suspicion was based on the fact Mr. Kurtenbach
visited the emergency room at the Rapid City Regional Hospital in Rapid City,
South Dakota, twice on December 17, 2013.   (Docket 15-2 at p. 2).   Parole
Officer Hower communicated his suspicions to Agent Wenande, who opened an
investigation.   (Docket 15 ¶ 18).

      As part of the investigation, on January 3, 2014, AAG Quasney issued
three subpoenas *duces tecum* ("subpoenas") to healthcare providers to obtain Mr.
Kurtenbach's medical records.   Id. ¶ 21; see also Docket 15-1 at pp. 2-4.   The
subpoenas were captioned "In the Matter of the Grand Jury Investigation into
Criminal Activity" and were issued to Wal-Mart Pharmacy Store #10-3872 and
two subpoenas were issued to Rapid City Regional Health.   (Docket 15-1 at
pp. 2-4) (capitalization omitted).   One of the subpoenas was issued on the
authority of a Meade County grand jury and the other two on the authority of a
Pennington County grand jury.   Id.   All three subpoenas commanded the
providers to appear at the Pennington County Courthouse and present the
documents subpoenaed.   Id.   The subpoenas allowed each provider to deliver
Mr. Kurtenbach's medical records to Agent Wenande at a telefax number or

mailing address provided.   Id.   Each of the three providers provided Agent Wenande with Mr. Kurtenbach's medical records.   (Docket 15-2 at p. 3).

A Pennington County, South Dakota, grand jury indicted Mr. Kurtenbach with count 1: attempt to obtain possession of a controlled substance by theft, misrepresentation, forgery or fraud; count 2: attempt to obtain possession of a controlled substance by theft, misrepresentation, forgery or fraud; count 3: attempted possession of a controlled substance with the intent to distribute; and count 4: attempted possession of a controlled substance with the intent to distribute.   (Docket 25-2 at pp. 2-5).   The indictment was filed in Seventh Judicial Circuit Court, Pennington County, South Dakota, as Crim. No. 14-405. Id. at p. 2.

In criminal case, Crim. No. 14-405, Mr. Kurtenbach filed a motion for sanctions seeking to prohibit the state at trial from using any of the information obtained through the three subpoenas.   (Docket 15-2 at p. 2).   In a memorandum opinion, on July 28, 2014, Seventh Circuit Judge Wally Eklund ruled "[a]ll three subpoenas were issued before a grand jury convened to consider evidence in the Defendant's case."   Id. at p. 5.   The state trial judge concluded Mr. Kurtenbach had "a reasonable expectation of privacy in his medical and prescription records and therefore a protectable Fourth Amendment interest. The State's use of the three unsupervised investigative subpoenas *duces tecum* was beyond the scope of SDCL §§ 23A-14-1 and 23A-14-5."   Id. at p. 6.   The trial court found "[t]he use of these unsupervised investigative subpoenas is

widespread. . . . [T]he State admits that based on a brief survey, the State's Attorney's offices in Custer, Gregory, Lawrence, Meade, and Union Counties routinely issue subpoenas to obtain medical records in criminal cases." Id. (internal reference and quotation marks omitted). As a remedy for the violation of Mr. Kurtenbach's Fourth Amendment rights, the trial court ruled: "[i]n light of the widespread use, the Court has determined that prohibiting the State from admitting into evidence, at the time of trial, the medical and pharmacy records as well as any evidence stemming from the collection of those records is an appropriate sanction in this case to deter future Fourth Amendment violations." Id. Findings of facts and conclusions of law and an order were entered consistent with the memorandum opinion. Id. at pp. 7-14 and Docket 25-4 at p. 2).

The amended complaint alleges AAG Quasney and the State violated Mr. Kurtenbach's constitutional right of privacy. (Docket 15 ¶ 29). Mr. Kurtenbach alleges "[u]pon information and belief, the State has made a practice of using invalid subpoenas for this purpose, and continues that practice." Id. ¶ 30. He further alleges "[o]n information and belief, the Attorney General has failed to properly train and supervise his subordinates. . . . [T]he sort of violations described here have occurred frequently enough that the Attorney General knew or should have known they were happening, and that they were improper." Id. ¶ 32.

Mr. Kurtenbach seeks relief in the form of money damages against AAG Qausney in her individual capacity and an injunction against her in her official capacity.  Id. ¶ 33(a).  He also seeks declaratory and injunctive relief against Attorney General Jackley in his official capacity.  Id. ¶ 33(b).

AAG Qausney moves to dismiss count 1 on the basis of prosecutorial immunity.  (Docket 24 at p. 5).  She argues her conduct which is the subject of count 1 was "clearly directed at her while functioning as a prosecuting attorney on behalf of the State."  Id. at p. 15.  As a prosecuting attorney, AAG Qausney argues "she is entitled to absolute immunity."  Id.

In the alternative, AAG Qausney argues that if "not entitled to absolute immunity, she is entitled to qualified immunity."  Id. at p. 16 (referencing Malley v. Briggs, 475 U.S. 335, 341 (1986) and Saucier v. Katz, 533 U.S. 194, 201 (2001)).  First, she contends her conduct did not violate Mr. Kurtenbach's constitutional rights.  Id. at p. 17.  Second, she asserts "there is no Eighth Circuit or U.S. Supreme Court precedent" which declares similar conduct as violative of the Fourth Amendment such that a "reasonable official would understand that such particular conduct violates the Fourth Amendment."  Id. at p. 17 (referencing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Mr. Kurtenbach counters AAG Qausney is not entitled to absolute immunity because there was no criminal prosecution pending at the time she issued the three subpoenas.  (Docket 31 at p. 12).  He argues the state trial court ruled AAG Qausney's use of the three "subpoenas violated both state law

11

and the federal Constitution."[2] Id. at p. 13 (referencing Docket 15-2 at p. 6). Based on that ruling, Mr. Kurtenbach asserts "issue preclusion" prevents AAG Qausney from "relitgation of that issue in a § 1983 action." Id. at p. 14 (citing Simmons v O'Brien, 77 F.3d 1093, 1096 (8th Cir. 1996); Nance v Humane Society, No. 15-3512, 2016 WL 4136972, at *1 (8th Cir. Aug 4, 2016)).

In rebuttal, AAG Qausney argues Mr. Kurtenbach is barred from asserting a Fourth Amendment claim because of his plea agreement in a separate criminal case, Crim. No. 14-725. (Docket 38 at p. 2) (referencing Docket 25-5). In exchange for Mr. Kurtenbach's guilty plea in Crim. No. 14-475, AAG Qausney argues Crim. No. 14-405 was dismissed with prejudice and the issue of the three subpoenas was resolved, because "the State would not appeal Judge Eklund's decision [in Crim. No. 14-405]." Id. at p. 3. Because of the plea agreement, AAG Qausney contends Mr. Kurtenbach lacks standing to assert a violation of the Fourth Amendment as he did not suffer "an injury in fact." Id. at p. 4 (referencing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982)).

As a final defense to count 1, AAG Qausney asserts the doctrine of issue preclusion is not applicable because there was not "a full and reasonable opportunity to litigate" the state trial judge's ruling. (Docket 38 at pp. 5-6).

---

[2]"Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of [state] law." Baker v. McCollan, 443 U.S. 137, 146 (1979). For that reason, the court will only address Mr. Kurtenbach's claims under the United States Constitution.

She argues that the trial judge's "decision was not a final judgment. His decision was interlocutory in nature." Id. at p. 7.

GUILTY PLEA

As a general rule, a plea of guilty in a state court criminal proceeding is not construed as a waiver of a defendant's Fourth Amendment claims under § 1983 in federal court. Haring v. Prosise, 462 U.S. 306, 323 (1983). "When a court accepts a defendant's guilty plea, there is no adjudication whatsoever of any issues that may subsequently be the basis of a § 1983 claim." Id. at 322 n.11. A contrary "rule would require an otherwise unwilling party to try Fourth Amendment questions to the hilt and prevail in state court in order to preserve the mere possibility of later bringing a § 1983 claim in federal court." Id. at 322 (internal citation, quotation marks and brackets omitted).

On the other hand, "[t]he plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but we have repeatedly held that the government may encourage a guilty plea by offering substantial benefits in return for the plea." United States v. Mezzanatto, 513 U.S. 196, 209-10 (1995) (internal citation and quotation marks omitted). "[A]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of [a constitutional right] is valid and enforceable." Id. at 210.

During the change of plea hearing in Crim. No. 14-475, Judge Eklund engaged Mr. Kurtenbach in a colloquy regarding his constitutional rights prior to

13

accepting the guilty plea. (Docket 25-5 at pp. 4:18-5:17). Mr. Kurtenbach agreed to waive his constitutional rights in Crim. No. 14-475 as part of the plea. Id. The decision to change his plea was "made after thoughtful reflection and a decision that [he] made of [his] own free will and accord." Id. at p. 7:19. The only part of the plea agreement relevant to the present case was that "the Attorney General's Office would not pursue an appeal in File 14-405."[3] Id. at p. 3:15-16.

In Crim. No. 14-475 there was neither a discussion nor a waiver by Mr. Kurtenbach of his right to assert any violation of his constitutional rights in Crim. No. 14-405 through a subsequent state or federal civil action. The court finds that Mr. Kurtenbach's plea agreement did not prohibit him from asserting a § 1983 claim for the violation of his constitutional rights under the Fourth Amendment.

The defendants' reply brief asserts Heck bars Mr. Kurtenbach's claims against AAG Qausney and Attorney General Jackley because "a state prisoner cannot use a § 1983 action to challenge his confinement." (Docket 38 at p. 3) (referencing Skinner v. Switzer, 562 U.S. 521, 533 (2011) (quoting Heck, 512 U.S. at 487). "The gist of [Heck, 512 U.S. 477] is that section 1983 is not an appropriate vehicle for attacking the validity of a state conviction." Wilson v.

---

[3]The only issue disclosed to this court was the state's appeal in Crim. No. 14-405 from the trial court's order "suppressing the . . . medical records, pharmacy records, and any evidence stemming from the collection of those record," obtained through the three subpoenas. See Docket 38 at p. 2 n.2.

Lawrence County, Missouri, 154 F.3d 757, 761 (8th Cir. 1998). Mr. Kurtenbach is not asking the court to overturn his conviction in Crim. No. 14-475, but rather he is asking this court to compensate him for a violation of his Fourth Amendment rights in Crim. No. 14-405. (Docket 15). Heck does not constitute a bar to plaintiff's claims.

ISSUE PRECLUSION

"State courts unquestionably have power to render preclusive judgments regarding the Fourth Amendment's prohibition of unreasonable searches and seizures." Linnen v. Armainis, 991 F.2d 1102, 1108 (3d Cir. 1993) (referencing Allen v. McCurry, 449 U.S. 90, 95 (1980); Stone v. Powell, 428 U.S. 465, 494-95 (1976)). In Crim. No. 14-405, the trial court completed a thorough analysis of Mr. Kurtenbach's Fourth Amendment right to privacy and the violation which occurred. (Docket 15-2 at pp. 3-14). The question is whether collateral estoppel prevents AAG Qausney, or Attorney General Jackley for that matter, from challenging the trial court's decision.

In Haring, the court held that the federal full faith and credit statute, 28 U.S.C. § 1738, "generally requires federal courts to give [the same] preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so." Haring, 462 U.S. at 314 (internal citation and quotation marks omitted). "Accordingly, if state rules of collateral estoppel would bar relitigation of fourth amendment claims in a postconviction civil action, the federal court must give the state conviction the same effect."

15

Sanders v. Frisby, 736 F.2d 1230, 1231 (8th Cir. 1984) (referencing Haring, 462 U.S. 306; other references omitted).

"The collateral estoppel doctrine 'bar[s] relitigation of an essential fact or issue involved in the earlier suit' if a four-part test is satisfied: '(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?' " Zebrowski v. Am. Standard Ins. Co. of Wisconsin, No. CV 16-5018, 2017 WL 4220452, at *3 (D.S.D. Sept. 21, 2017) (citing Hamilton v. Sommers, 855 N.W.2d 855, 866 (S.D. 2014) (quoting Estes v. Millea, 464 N.W.2d 616, 618 (S.D. 1990)).

Applying this test, the court finds: (1) the issue decided in Crim. No. 14-405 is precisely the issue presented in this litigation; (2) there was a final judgment on the merits as the state trial court's decision was not appealed to the South Dakota Supreme Court; (3) AAG Qausney was in privity with the State of South Dakota in Crim. No. 14-405, and another Assistant Attorney General, Laura Shattuck, advocated the State's position before the state trial court;[4] and (4) there was a full and fair opportunity to litigate the constitutionality of the three subpoenas in Crim. No. 14-405. Zebrowski, supra. The court finds the decision of the state trial court was a well-reasoned analysis of the Fourth

---

[4]See Docket 15-2 at pp. 2-6.

16

Amendment, Mr. Kurtenbach's right of privacy, the invalidity of the three

subpoenas and the constitutional violation which occurred. The decision of the

state court is binding on AAG Qausney and Attorney General Jackley in this

case.

ABSOLUTE IMMUNITY

The United States Court of Appeals for the Eighth Circuit outlined the

parameters for prosecutorial absolute immunity.

> Prosecutors are entitled to absolute immunity from civil liability
> under § 1983 when they are engaged in prosecutorial functions that
> are intimately associated with the judicial process. Actions
> connected with initiation of prosecution, even if those actions are
> patently improper are immunized. However, purely administrative
> or investigative actions that do not relate to the initiation of a
> prosecution do not qualify for absolute immunity. The question of
> whether absolute or qualified immunity applies depends on whether
> the prosecutor's acts were prosecutorial, investigatory or
> administrative in nature.

Schenk v. Chavis, 461 F.3d 1043, 1046 (8th Cir. 2006) (internal citations,

quotation marks, and alteration marks omitted). "[T]he official seeking absolute

immunity bears the burden of showing that such immunity is justified for the

function in question." Burns v. Reed, 500 U.S. 478, 486 (1991).

In this case, the state court's analysis made it clear AAG Qausney was

engaged in an investigative function when she issued the unconstitutional

subpoenas.

> The State argues [SDCL § 23A-14-2] gives prosecutors the power to
> issue subpoenas . . . because it was issued in support of a
> prosecution. While the documents state that they are "In the
> Matter of the Grand Jury Investigation into Criminal Activity within

Pennington County," they give no specific title of the action, proceeding, or prosecution that it is being issued in support of. . . . SDCL § 23A-14-5 does not contain language that suggests that a *subpoena duces tecum* can be issued before a prosecution begins. Rather, the language of § SDCL 23A-14-5 that allows for pretrial production of documents under the supervision of the court and upon terms which allow inspection of the documents by the parties suggests that subpoenas *duces tecum* are not intended to be secretive and they are not intended to go unsupervised by the court. . . . The State's use of the three unsupervised investigative subpoenas duces tecum was beyond the scope of SDCL §§ 23A-14-2 and 23A-14-5.

Docket 15-2 at pp. 5-6 (italics in original). Absolute immunity does not shield AAG Qausney in this case. Schenk, 461 F.3d at 1046.

QUALIFIED IMMUNITY

Qualified immunity is synonymous with good faith immunity in the context of public employees. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). See also Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 976 (8th Cir. 1993). "Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sisney v. Reisch, 674 F.3d 839, 844 (8th Cir. 2012) (internal citations and quotation marks omitted). "[Q]ualified immunity . . . is both a defense to liability and an entitlement not to stand trial or to face the other burdens of litigation." Kendrick v. Pope, 671 F.3d 686, 689 (8th Cir. 2012). See also Angarita v. St. Louis County, 981 F.2d 1537, 1548 (8th Cir. 1992) ("The doctrine of qualified immunity aims to keep public officials out of the court.").

"To determine whether the defendants are entitled to qualified immunity, [the court must] ask two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." Ehlers v. City of Rapid City, 846 F.3d 1002, 1008 (8th Cir. 2017) (internal citations and quotation marks omitted). "The court may consider these steps in any order . . . but unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." Id. (internal citations, quotation marks and brackets omitted). "In order to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (internal citation, quotation marks and brackets omitted). "While prior cases need not have expressly determined that the action in question is unlawful, in the light of pre-existing law the unlawfulness must be apparent. . . . Reciting an abstract right at a high level of generality will not suffice." Id. (internal citation and quotation marks omitted).

"When an official . . . timely files a motion for dismissal . . . asserting qualified immunity, the official is entitled to a ruling on the issue of qualified immunity." Payne v. Britten, 749 F.3d 697, 699 (8th Cir. 2014). "The defendants . . . like any public officials, are entitled to a reasoned denial or grant of their claim of qualified immunity at the motion to dismiss stage, the summary judgment stage, and any other permissible stage at which a proper motion is

filed." Id. at 702.   In resolving a motion to dismiss, the court must consider the factual allegations of the complaint and any other factual declarations as true for qualified immunity analysis purposes.   Hager v. Arkansas Department of Health, 735 F.3d 1009, 1013 (8th Cir. 2013) ("Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff. . . . Courts must not presume the truth of legal conclusions couched as factual allegations.) (internal citation omitted).   See also Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005) ("To prevail at this stage of the proceedings [Rule 12(b)(6) motion to dismiss], defendants must show that they are entitled to qualified immunity on the face of the complaint. . . . The exhibits . . . attached to [the] complaint are part of the complaint for this purpose.") (internal citation omitted).

Considering the first factor in the qualified immunity analysis, the court must determine "whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right." Ehlers, 846 F.3d at 1008.   "It is indeed clear beyond peradventure that 'the Constitution embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the reach of government.' "   In re Search Warrant (Sealed), 810 F.2d 67, 71 (3d Cir. 1987) (citing Thornburgh v. American College of Obstetricians, 476 U.S. 747, 772 (1986)).   "This constitutional right to privacy extends to 'the individual interest in avoiding disclosure of personal matters.' "   Id. (citing Whalen v. Roe, 429 U.S. 589, 599 (1977) (other citations

omitted)).  "And as courts have held, medical records are clearly within this constitutionally protected sphere."  Id. (referencing Whalen, 429 U.S. at 598; United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980) ("There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.").

Post-Whalen, the Supreme Court has not specifically addressed whether medical records are constitutionally protected.   However, a majority of the Circuit Courts of Appeals have concluded the constitutional right to privacy extends to medical and prescription records.

> Doe v. New York, 15 F.3d 264, 267 (2d Cir. 1994) (there is a Fourth Amendment constitutional right of confidentiality to personal medical information);
>
> Doe v. Southeastern Pennsylvania Trans. Auth., 72 F.3d 1133, 1137 (3d Cir. 1995) (medical records are within the scope of privacy protected by the Constitution), *cert. denied*, 519 U.S. 808 (1996);
>
> Anderson v. Romero, 72 F.3d 518, 522 (7th Cir. 1995) (there is a Fourth Amendment constitutional right to the confidentiality of medical records);
>
> Doe v. Attorney General of the United States, 941 F.2d 780, 795-796 (9th Cir. 1991)( there is a Fourth Amendment constitutional right to the confidentiality of medical records), *vacated on other grounds sub nom.* Reno v. Doe, 518 U.S. 1014 (1996);
>
> A.L.A. v. W. Valley City, 26 F.3d 989, 990 (10th Cir. 1994) ("[C]onfidential medical information is entitled to constitutional privacy protection.");

Herring v. Keenan, 218 F.3d 1171, 1175 (10th Cir. 2000) ("This circuit . . . has repeatedly interpreted . . . Whalen v. Roe, 429 U.S. 589 (1977), as creating a right to privacy in the non-disclosure of personal information."), *cert. denied*, 534 U.S. 840 (2001);

Douglas v. Dobbs, 419 F.3d 1097, 1102 (10th Cir. 2005) ("[W]e have no difficulty concluding that protection of a right to privacy in a person's prescription drug records, which contain intimate facts of a personal nature, is sufficiently similar to other areas already protected within the ambit of privacy."), *cert. denied*, 546 U.S. 1138 (2006);

Harris v. Thigpen, 941 F.2d 1495, 1513 (11th Cir. 1991) (assuming such right exists); and

*Contra* Jarvis v. Wellman, 52 F.3d 125, 126 (6th Cir. 1995) (holding that constitutional right of privacy does not apply to a disclosure of medical records).

While the United States Court of Appeals for the Eighth Circuit never specifically addressed the issue, the court is confident the Eighth Circuit would give constitutional protection to those records. In Cooksey v. Boyer, 289 F.3d 513, 515 (8th Cir. 2002), the court acknowledged "[i]t is established that 'notions of substantive due process contained within the Fourteenth Amendment safeguard individuals from unwarranted governmental intrusions into their personal lives.'" Id. at 515 (citing Eagle v. Morgan, 88 F.3d 620, 625 (8th Cir. 1996) (citing Whalen, 429 U.S. at 598 n.23). The Cooksey court said "[t]his safeguard includes protection of the 'individual interest in avoiding disclosure of personal matters,'" Id. (citing Eagle, 88 F.3d 620) (quoting Whalen, 429 U.S. at 599–600 ). The safeguard "has been characterized as 'the right to confidentiality.'" Id. (citing Eagle, 88 F.3d 620).

A number of district courts in the Eighth Circuit held that medical records are entitled to constitutional privacy protection.[5]

> Hopkins v. Jegley, 267 F. Supp. 3d 1024, 1094 (E.D. Ark. 2017) ("Numerous courts have recognized that confidential medical information is entitled to constitutional privacy protection in order to prevent the disclosure of such personal medical records.") (referencing Cooksey, 289 F.3d at 516; A.L.A., 26 F.3d at 990; other citations omitted);

> Bolt v. Doe, No. 5:14-CV-5223, 2014 WL 5797706, at *5 (W.D. Ark. Nov. 7, 2014) (The Fourth Amendment right of privacy "extends to medical test results, medical records, and medical communications.") (referencing Ferguson v. City of Charleston, 532 U.S. 67, 78 (2001) ("The reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent."); and

> Shuda v. Williams, No. 4:08CV3168, 2008 WL 4661455, at *3 (D. Neb. Oct. 20, 2008) ("By any estimation, medical records must be considered extremely personal and entitled to protection under the fourteenth amendment.")

Considering the first factor in the qualified immunity analysis, Mr. Kurtenbach has demonstrated that an unlawful seizure of his medical and pharmacy information would constitute a violation of his rights under the Fourth Amendment.

---

[5]It must be noted that in Daulton v. Dooley, No. CIV. 05-4184, 2006 WL 1875900 (D.S.D. July 3, 2006), the district court held the disclosure of a custodial prisoner's medical records to the prison's attorney "does not rise to the level of a breach of a right recognized as 'fundamental under the Constitution and therefore, disclosure of plaintiff's medical records did not violate a constitutional right." Id., 2006 WL 1875900, at *1 (citing Jarvis, 52 F.3d at 126).

The second step in the determination of whether AAG Qausney is entitled to qualified immunity is "whether the right was clearly established at the time of the deprivation." Ehlers, 846 F.3d at 1008. Specifically, the court must resolve whether "the contours of the right [were] sufficiently clear [in 2014] that a reasonable official would understand that what [she] is doing violates that right." Id. In other words, would a reasonable officer know the issuance of the subpoenas at the behest of a non-existent grand jury would violate Mr. Kurtenbach's Fourth Amendment rights? AAG Qausney asserts this question must be answered in the negative as "there is no Eighth Circuit or U.S. Supreme Court precedent that provides as such, and that no reasonable official would understand that such particular conduct violates the Fourth Amendment . . . ." (Docket 24 at p. 17).

"The investigative power of the grand jury is necessarily broad if its public responsibility is to be adequately discharged." Branzburg v. Hayes, 408 U.S. 665, 700 (1972) (citing Costello v. United States, 350 U.S. 359, 364 (1956)). "Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that 'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege . . . is particularly applicable to grand jury proceedings." Branzburg, 408 U.S. at 688 (internal citations omitted). A grand jury has the authority to issue subpoenas *duces tecum* to "compel the production

of evidence . . . as it considers appropriate . . . ."  United States v. Calandra, 414 U.S. 338, 343 (1974).

Production of information pursuant to a subpoena "is proper if: (1) the subpoena was issued pursuant to lawful authority, (2) the subpoena was issued for a lawful purpose, (3) the subpoena requests information which is relevant to the lawful purpose, and (4) the disclosure sought is not unreasonable."  United States v. McDonnell Douglas Corp., 751 F.2d 220, 226 (8th Cir. 1984).  "A subpoena [d]uces tecum issued to obtain records is subject to no more stringent Fourth Amendment requirements than is the ordinary subpoena.  A search warrant, in contrast, is issuable only pursuant to prior judicial approval and authorizes Government officers to seize evidence without requiring enforcement through the courts."  United States v. Miller, 425 U.S. 435, 446 n.8 (1976). "The Fourth Amendment provides protection against a grand jury subpoena duces tecum too sweeping in its terms to be regarded as reasonable."  United States v. Dionisio, 410 U.S. 1, 11 (1973) (internal citation and quotation marks omitted).

Under the rules governing federal criminal proceedings, "[a] subpoena must state the court's name and the title of the proceedings, include the seal of the court, and command the witness to attend and testify at the time and place the subpoena specifies."  Fed. R. Crim. P. 17(a).  A subpoena *duces tecum* "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates."  Fed. R. Crim. P. 17(c)(1).

A prosecutor has the power to subpoena witnesses and to require the production of documents before a state grand jury. South Dakota law provides "[a] prosecuting attorney may issue subpoenas, subscribed by him, for witnesses within the state, in support of a prosecution, or for such witnesses as a grand jury may direct." SDCL § 23A-14-2. State law permits the issuance of a subpoena *duces tecum.* "A subpoena may also command the person to whom it is directed to produce books, papers, documents, or other objects designated therein. A court on motion made promptly may quash or modify a subpoena if compliance would be unreasonable or oppressive." SDCL § 23A-14-5.

While there may be no specific pre-existing law which expressly declares the conduct of AAG Qausney was unlawful, with the extensive precedent of constitutional and statutory authority recited above, the court must decide whether "in light of pre-existing law the unlawfulness must be apparent." Ehlers, 846 F.3d at 1008. First, there was no grand jury convened and in session at the time of the issuance of the three subpoenas. Second, the three subpoenas did not direct the healthcare providers to deliver the documentation sought to a grand jury or an active agent of a grand jury. Third, and most important, the three subpoenas were not issued in the name of a court or grand jury. Therefore, the issuance of the three subpoenas was not proper because they were not "issued pursuant to lawful authority." McDonnell Douglas Corp., 751 F.2d at 226.

26

"[I]n light of pre-existing law" it would "be apparent" to a reasonable officer in the same capacity of AAG Quasney that the issuance of the three subpoenas was "unlawful." Ehlers, 846 F.3d at 1008; see also Anderson, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

The court finds the three subpoenas were issued "without a shadow of authority." Silverthorne Lumber Co. v. United States, 251 U.S. 385, 390 (1920). Based on the above analysis, AAG Quasney is not entitled to qualified immunity.

WAIVER

As a final defense to Mr. Kurtenbach's claim, the defendants argue Mr. Kurtenbach waived his constitutional rights in the Community Supervision Agreement. (Docket 24 at p. 18 n.13) (referencing Docket 25-1 ¶ 5). They contend that even "[a]ssuming Plaintiff had a Fourth Amendment right, as a parolee he . . . 'consented' to search and seizure with or without a search warrant." Id. (referencing Docket 25-1¶ 5).

Mr. Kurtenbach argues paragraph 5 of the Community Supervision Agreement does not give consent, in advance, to all future searches. (Docket 31 at pp. 16-17). Rather, he contends the provision requires him to consent, if asked to do so, in the future. Id. at p. 16. In addition, Mr. Kurtenbach argues

the language of the waiver does not include medical records as those "don't fit into any of the covered categories." Id. at p. 17.

Paragraph 5 of the Community Supervision Agreement stated:

Search and Seizure:

I will submit my person, property, place of residence, vehicle and personal effects to search and seizure at any time, with or without a search warrant, whenever reasonable suspicion is determined by a parole agent or law enforcement.

I agree to such a search and seizure at any place within or outside of the boundaries of the State of South Dakota . . . .

(Docket 25-1 ¶ 5). The court does not agree with Mr. Kurtenbach's reading of the timing of the consent provision. The Supreme Court ruled the "Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." Samson v. California, 547 U.S. 843, 857 (2006). The purpose of paragraph 5 was to acknowledge, in advance, that Mr. Kurtenbach was at the time of the execution of the agreement giving his consent to all future searches and seizures of his person and the items identified. A parole agent or law enforcement officer did not have to ask Mr. Kurtenbach during a face-to-face confrontation in the future for his consent. The purpose of paragraph 5 was to simply acknowledge the Supreme Court ruling of Samson.

The real question is whether paragraph 5 extends to Mr. Kurtenbach's medical or pharmacy records. The parties provide the court no authority which concludes these records are included in a general consent to search provision of a parolee or other defendant under supervision. The court believes this issue is

significant to the resolution of both plaintiff's constitutional claims and defendants' motion to dismiss count 1. The issue may impact plaintiff's damages claim and defendants' waiver argument. By separate order the court will direct the parties to brief these issues.

DECLARATORY AND INJUNCTIVE RELIEF

Mr. Kurtenbach also seeks declaratory and injunctive relief against Attorney General Jackley in count 1 to prohibit the future use of subpoenas like the three subpoenas analyzed above. (Docket 15 at p. 6 ¶ 33(b)). Attorney General Jackley seeks dismissal of count 1 asserting Mr. Kurtenbach "fails to allege or describe any policy or custom that played a part in any alleged violation of federal law. . . . Because he has failed in doing so, he cannot show that such alleged policy or custom was the moving force behind his alleged deprivation." (Docket 24 at p. 12) (referencing Hafer v. Melo, 502 U.S. 21 (1991) and Kentucky v. Graham, 473 U.S. 159 (1985)). In response, Mr. Kurtenbach points to the state order in which the court found "the State admitted it uses phony subpoenas routinely." (Docket 31 at p. 27) (referencing Docket 15-2 at p. 6) ("The use of these unsupervised investigative subpoenas is widespread. In its brief, the State admits that based on a brief survey, the State's Attorney's offices in Custer, Gregory, Lawrence, Meade, and Union Counties 'routinely issue subpoenas to obtain medical records in criminal cases.' ") (internal reference omitted). (Docket 15-2 at p. 6).

"This court has 'original jurisdiction . . . to redress the deprivation, under color of any State law . . . of any right . . . secured by the Constitution . . . .'" Tribe v. Fleming, No. CIV. 13-5020, 2016 WL 7324077, at *7 (D.S.D. Dec. 15, 2016) (citing 28 U.S.C. § 1343(a)(3)). "The court also has jurisdiction 'to secure equitable or other relief under any Act of Congress providing for the protection of civil rights . . . .'" Id. (citing 28 U.S.C. § 1343(a)(4)). The focus of declaratory and injunctive relief is not to address any alleged injuries to Mr. Kurtenbach in the past, but to prevent future constitutional violations. Id. In order for a state official to be sued in his official capacity for prospective injunctive relief, Mr. Kurtenbach must prove a continuing or impending state action that violates the Constitution and he must show that "the entity itself is a 'moving force' behind the deprivation." Graham, 473 U.S. at 166 (citing Polk County v. Dodson, 454 U.S. 312, 326 (1981).

At this point in the litigation and assuming all facts of the complaint are true, the court finds it must not dismiss count 1 for declaratory and injunctive relief against Attorney General Jackley. The parties should be permitted to conduct pretrial discovery to determine whether, in fact, there is an on-going practice of using the unlawful subpoenas analyzed above and whether Attorney General Jackley's Office has a practice or policy of endorsing the use of the subpoenas.

## COUNT 2:   UNFETTERED STATE SURVEILLANCE OF INDIVIDUALS' PHARMACY RECORDS

In count 2, Mr. Kurtenbach challenges South Dakota Division of Criminal Investigation Agent Wenande's use of the Prescription Drug Monitoring Program ("PDMP").   (Docket 15 at p. 6) (referencing SDCL Title 34, Chapter 20e).   Mr. Kurtenbach claims the PDMP violates the constitutional right of privacy.   Id. at p. 8 ¶ 40.   Mr. Kurtenbach asserts that Attorney General Jackley, Agent Wenande and Secretary Daemingk knew or should have known that searches instigated under the PDMP were unconstitutional.   Id. ¶¶ 41-43.   Plaintiff alleges Attorney General Jackley and Secretary Daemingk failed to properly train and supervise their subordinates and knew the use of the PDMP was ongoing and improper.   Id. ¶ 46.   Mr. Kurtenbach seeks money damages and injunctive relief against Agent Wenande, and declaratory and injunctive relief against Attorney General Jackley and Secretary Kaemingk.   Id. at p. 9 ¶ 47.

Fed. R. Civ. P. 5.1 requires a party seeking to challenge the constitutionality of any state statute to comply with the provisions of that section as a condition precedent to a district court taking any action upon the challenge. Rule 5.1 provides in relevant part:

> (a)   Notice by a Party.   A party that files a pleading . . . drawing into question the constitutionality of a . . . state statute must promptly:
>
>   (1)   file a notice of constitutional question stating the question and identifying the paper that raises it, if:
>   . . . .

>     (B)     a state statute is questioned and the
>             parties do not include the state, one
>             of its agencies, or one of its officers or
>             employees in an official capacity; and
>
> (2)         serve the notice and paper . . . on the state
>             attorney general if a state statute is
>             questioned--either by certified or registered
>             mail or by sending it to an electronic
>             address designated by the attorney general
>             for this purpose.

Fed. R. Civ. P. 5.1(a)(1)(B) and (a)(2).    South Dakota law contains a similar notice

provision.    "When the constitutionality of an act of the Legislature affecting the

public interest is drawn in question in any action to which the state or an

officer, agency, or employee of the state is not a party, the party asserting the

unconstitutionality of the act shall notify the attorney general thereof within

such time as to afford him the opportunity to intervene."    SDCL § 15-6-24(c).

While Attorney General Jackley is a named defendant, plaintiff has not

complied with the provisions of Rule 5.1, in that he has not filed a "notice of

constitutional question," and the State of South Dakota has not been named as a

defendant.    Fed. R. Civ. P. 5.1(a)(1).    Additionally, the parties did not brief the

constitutionality of the PDMP to the extent the court believes necessary to resolve

the challenge.    The court reserves consideration of any challenge in count 2 to

the constitutionality of the PDMP until plaintiff complies with Rule 5.1(a)(1).    If

that occurs, the court will issue a separate briefing schedule to resolve the

constitutional challenge.

To the extent count 2 seeks money damages against Agent Wenande, the court finds he is entitled to protection from plaintiff's claim under the cloak of qualified immunity.   The court cannot expect that a Division of Criminal Investigation agent, or any other law enforcement officer for that matter,   would know or reasonably contemplate that a program enacted by the South Dakota legislature would violate a citizen's constitutional right of privacy.   Furthermore, injunctive relief against Agent Wenande in this litigation would be improper. Mr. Kurtenbach's count 2 claims against Agent Wenande are dismissed with prejudice.

As to the count 2 claim seeking declaratory and injunctive relief against Attorney General Jackley, those claims are intrinsically linked with plaintiff's constitutional challenges to the PDMP.   Secretary Kaemingk is not associated with plaintiff's constitutional challenge to the PDMP.   Count 2 as it relates to Secretary Kaemingk is dismissed without prejudice.

**COUNT 4:   JAILING OF PAROLEES WITHOUT A PROPER BASIS**

 In count 4 of the amended complaint, Mr. Kurtenbach alleges his state parole supervisor, Nathan Hower, had Mr. Kurtenbach arrested and jailed in violation of his constitutionally protected liberty interests.   (Docket 15 at pp. 11 ¶59-12 ¶ 69).   Mr. Kurtenbach alleges Mr. Hower acted on instructions from Agent Wenande.   Id. at p. 11 ¶ 64.   "By jailing [Mr. Kurtenbach] without any legal basis," plaintiff alleges "the State violated [his] right to due process

under the Fifth and Fourteenth Amendments." Id. at p. 12 ¶ 69).   Mr.

Kurtenbach seeks money damages against Agent Wenande, as well as injunctive

relief against Agent Wenande, Attorney General Jackley and Secretary

Daemingk.   Id. at p. 13 ¶ 72(a) & (b).

Defendants seek dismissal of count 4 asserting Mr. Kurtenbach, as a state

parolee, signed a Community Supervision Agreement, specifically permitting

"any parole agent . . . to place [Mr. Kurtenbach] in custody at any time . . . if [he

is] alleged to be in violation of any conditions of this agreement."   (Docket 24 at

p. 21) (citing Docket 25-1 at p. 3).   Mr. Kurtenbach counters defendants'

argument asserting that while his parole officer may have "had suspicions" of

criminal conduct and that he was violating his parole conditions, no one "had

. . . substantiated them."   (Docket 31 at p. 32).   Mr. Kurtenbach argues "the

provision in the parole agreement should not be interpreted as permitting

indefinite jailing based on no more than an unsubstantiated suspicion."   Id.

Mr. Kurtenbach contends the court should construe the Community Supervision

Agreement so it "requires some evidentiary substantiation" before his "limited

liberty interest" is revoked.   Id. at p. 33 (referencing Morrissey v. Brewer,

408 U.S. 471, 485 (1972) ("Such an inquiry should be seen as in the nature of a

'preliminary hearing' to determine whether there is probable cause or reasonable

ground to believe that the arrested parolee has committed acts that would

constitute a violation of parole conditions.").

Mr. Kurtenbach signed the Community Supervision Agreement on February 21, 2013, as a condition of parole and his release from custody. (Docket 25-1). As a condition of parole, Mr. Kurtenbach agreed to "obey all Municipal, County, State, Tribal, and Federal Laws." Id. at p. 2 ¶ 1. With his signature, Mr. Kurtenbach acknowledged "understand[ing] and agree[ing] that any parole agent has the authority to place [him] in custody any time and begin revocation proceedings if [he is] alleged to be in violation of any conditions of this agreement, and that my supervision may be revoked." Id. at p. 3.

In his amended complaint, Mr. Kurtenbach acknowledged that "[i]n December 2013, [his] parole officer, Nathan Hower, suspected that [he] had attempted to obtain prescription narcotics intended for pain treatment. Mr. Hower suspected that [Mr. Kurtenbach] didn't really need the drugs and therefore that his attempt broke the law." (Docket 15 at p. 4 ¶ 17). "Mr. Hower told Mr. Wenande . . . about [those] suspicions [and] Mr. Wenande began to investigate." Id. ¶ 18. Using the statutory authority permitted by the PDMP, Agent Wenande obtained copies of Mr. Kurtenbach's pharmacy records. Id. ¶¶ 35 & 44. Mr. Hower called Mr. Kurtenbach, asking him to go to the Pennington County Sheriff's Office to pick up some civil papers. Id. at p. 12 ¶ 65. When Mr. Kurtenbach arrived at the Sheriff's Office, he was placed in custody at the jail. Id. He remained in custody "for approximately three weeks." Id.

Mr. Kurtenbach, as a parolee, "does not enjoy the same right as ordinary citizens not to be arrested absent probable cause." Porter v. Wyse, No. 4:09-CV-00903, 2011 WL 13202674, at *2 (E.D. Ark. Jan. 12, 2011) (referencing Morrissey, 408 U.S. at 480). The arrest of Mr. Kurtenbach, as a parolee, on the basis of reasonable suspicion satisfied the Fourth Amendment. United States v. Knights, 534 U.S. 112, 121 (2001).

In count 4, Mr. Kurtenbach sues Agent Wenande for money damages. (Docket 15 at p. 13 ¶ 72(a)). While Agent Wenande may have been in a discussion about arresting Mr.Kurtenbach, Agent Wenande did not have plaintiff arrested. Count 4 fails to state a claim against Agent Wenande and must be dismissed. Fed. R. Civ. P. 12(b)(6).

Plaintiff alleges that "[b]y jailing [him] without any legal basis, the State violated [his] right to due process under the Fifth and Fourteenth Amendments." (Docket 15 at p. 12 ¶ 69). The State of South Dakota has immunity from plaintiff's claim in count 4. Will, 491 U.S. at 66.

Plaintiff seeks declaratory and injunctive relief against Attorney General Jackley and Secretary Daemingk. (Docket 15 at p. 12 ¶ 72(b)). He asks the court to declare that the "State's jailing of [him] violated his Constitutional rights to due process" and seeks "an order enjoining the Attorney General and Secretary of Corrections (or their subordinates) from jailing parolees on the basis of unsubstantiated suspicions; and an order requiring the Attorney General and

Secretary of Corrections to instruct their subordinates to refrain from engaging in that practice." Id.

Count 4 fails to state a viable claim against Attorney General Jackley or Secretary Daemingk, and a generalized claim that they are jailing parolees on the basis of unsubstantiated suspicions constitutes mere speculation. Defendants' motion to dismiss count 4 against Attorney General Jackley and Secretary Daemingk is granted.

**COUNT 5:   UNAUTHORIZED REVOCATION OF PAROLE**

Count 5 of the amended complaint alleges that in November 2016 while he was on state parole, Mr. Kurtenbach was arrested for "absconding from parole supervision and of using or possessing drugs." (Docket 15 at p. 14 ¶ 76). He further alleges that at a subsequent hearing Director Clark found Mr. Kurtenbach "had not absconded, but that [he] had failed to keep his parole supervisor informed of his whereabouts and that [he] had used or possessed drugs." Id. ¶ 77. Based on those findings, Director Clark affirmed the revocation of Mr. Kurtenbach's parole. Id. ¶ 78. Mr. Kurtenbach alleges South Dakota "law does not permit revocation of parole for the offenses Director Clark found [he had] . . . committed." Id. ¶ 79. "By revoking [his] parole without authorization of law," Mr. Kurtenbach alleges "the State deprived [him] of his freedom without Constitutionally guaranteed due process of law." Id. at p. 15 ¶ 82. Mr. Kurtenbach alleges "the State singled [him] out for unauthorized revocation in order to retaliate against him for suing to protect his constitutional

rights, and in order to prevent [him] from exercising his constitutional rights. In doing so, the State deprived [Mr. Kurtenbach] of his Constitutionally protected right to the equal protection of the laws." Id. ¶ 83. Finally, "[o]n information and belief," Mr. Kurtenbach alleges Attorney General Jackley and Secretary Daemingk "failed to properly train and supervise their subordinates. On information and belief, the sort of violations described here have occurred frequently enough that the Attorney General and Secretary of Corrections knew or should have known they were happening and that they were improper." Id. ¶ 84. In count 5, Mr. Kurtenbach seeks money damages against Director Clark, in his personal capacity, and declaratory and injunctive relief against Attorney General Jackley and Secretary Daemingk. Id. at p. 16 ¶ 85(a) & (b).

Defendants seek dismissal of count 5 of the amended complaint. (Docket 24 at pp. 9-10 & 21-22). Director Clark seeks dismissal on the basis of absolute immunity. Id. at p. 21. Director Clark asserts that as a probation officer he is "entitled to absolute immunity when [he] perform[s] discretionary tasks that play an integral part in the decision making process, such as when [he] evaluate[s] facts, draw legal conclusions, and make recommendations." Id. (referencing Anton v. Getty, 78 F.3d 393, 396 (8th Cir. 1996)). Director Clark argues he is entitled to absolute immunity even if he made "an unconstitutional or unlawful decision." Id. (referencing Patterson v. Von Riesen, 999 F.2d 1235, 1239 (8th Cir. 1993)).

Plaintiff acknowledges count 5 is "*presently* barred by the <u>Heck</u> doctrine." (Docket 31 at p. 35) (italics in original). He asserts, however, if he wins the state habeas petition presently pending in state court, then count 5 will survive. <u>Id.</u> (referencing Docket 25-8).

The court finds Director Clark is entitled to absolute immunity on the claims made against him in count 5. The amended complaint acknowledges Director Clark was acting in a quasi-judicial capacity when conducting the parole revocation. In that capacity, whether he made a mistake or unconstitutional decision in revoking Mr. Kurtenbach's parole, Director Clark is entitled to absolute immunity. " '[P]arole officials in deciding to grant, deny, or revoke parole, perform functions comparable to those of judges,' and are, therefore, entitled to absolute immunity." <u>Getty</u>, 78 F.3d at 396 (citing <u>Evans v. Dillahunty</u>, 711 F.2d 828 (8th Cir. 1983)). <u>See also</u> <u>Von Riesen</u>, 999 F.2d at 1239 ("An official does not act outside [his] jurisdiction simply because [he] makes an unconstitutional or unlawful decision."). Count 5 as it relates to Director Clark is dismissed with prejudice.

Count 5 fails to state a viable claim against Attorney General Jackley or Secretary Daemingk, and a generalized claim they are failing to properly train or supervise their subordinates constitutes mere speculation. Defendants' motion to dismiss count 5 against Attorney General Jackley and Secretary Daemingk is granted.

### COUNT 6: DELAYED AND DENIED PRELIMINARY REVOCATION HEARING

In count 6 of the amended complaint, Mr. Kurtenbach alleges that after his arrest for a parole violation in November 2016, the State failed to give him a timely preliminary hearing. (Docket 15 at p. 16 ¶¶ 86-87). He alleges that instead of conducting a preliminary hearing in Rapid City, South Dakota, he was transferred to Sioux Falls, South Dakota. Id. ¶ 87. Mr. Kurtenbach contends "[o]n information and belief, the State conducts all parole revocation hearings in Sioux Falls, regardless of where the related alleged offenses occurred." Id. at p. 17 ¶ 90. Mr. Kurtenbach alleges this action violates his right of due process to "a prompt hearing near the place where the alleged offenses occurred." Id. ¶ 91. "On information and belief," Mr. Kurtenbach alleges Attorney General Jackley and Secretary Daemingk "failed to properly train and supervise their subordinates. On information and belief, the sort of violations described here have occurred frequently enough that the Attorney General and Secretary of Corrections knew or should have known they were happening and that they were improper." Id. ¶ 92. Mr. Kurtenbach seeks money damages against Director Clark in his personal capacity and declaratory and injunctive relief against Attorney General Jackley and Secretary Daemingk. Id. ¶ 93(a) & (b).

Defendants seek dismissal of count 6. (Docket 24 at p. 22). They argue the South Dakota Board of Pardons and Parole documentation tell a different story than that told by Mr. Kurtenbach. Id. Defendants represent that the

revocation hearing documentation discloses Mr. Kurtenbach waived a preliminary hearing. Id. (referencing Docket 25-9 at p. 3).

Mr. Kurtenbach challenges defendants' basis for dismissal, contending that just because "[t]wo members of the parole board made a finding that [Mr. Kurtenbach] [waived a preliminary hearing]" does not make is so. (Docket 31 at p. 36). Mr. Kurtenbach argues "[w]aiver is a disputed fact question."

Pursuant to Fed. R. Evid. 201(b)(2), the court takes judicial notice of the fact that the violation hearing record states "[a] preliminary hearing with respect to the above referenced charge has been waived." (Docket 25-9 at p. 3). The record further discloses that Mr. Kurtenbach was represented by an attorney at that hearing. Id. Without supporting factual information, Mr. Kurtenbach's argument does not prohibit the court from taking judicial notice of the findings of the violation hearing board.

Mr. Kurtenbach's contention he "will likely continue to be exposed to Parole Board misconduct" in future parole settings is mere speculation and does not give him standing to challenge the procedures of the South Dakota Board of Pardons and Parole in the manner asserted in count 6. (Docket 31 at p. 37). Defendants' motion to dismiss count 6 is granted.

**COUNT 7: RETALIATION FOR SEEKING A PAROLE BOARD MEETING**

Count 7 of the amended complaint alleges that while Mr. Kurtenbach was incarcerated in the South Dakota prison system he was transferred from a minimum custody facility to maximum security for asking for a parole board

hearing and for asking to present mitigating information to the parole board. (Docket 15 at p. 18 ¶¶ 94-97).   He alleges "[t]he State took these actions to retaliate against [him] for seeking to exercise his Constitutional right to a Parole Board hearing in connection with the revocation of his parole."   <u>Id.</u> ¶ 98.   Mr. Kurtenbach alleges "[t]hese actions were directed or approved by Mr. Clark as well as others."   <u>Id.</u> ¶ 101.   Mr. Kurtenbach claims these actions violated his rights to due process and equal protection.   <u>Id.</u> ¶¶ 99-100.   "On information and belief," Mr. Kurtenbach alleges Attorney General Jackley and Secretary Daemingk "failed to properly train and supervise their subordinates.   On information and belief, the sort of violations described here have occurred frequently enough that the Attorney General and Secretary of Corrections knew or should have known they were happening and that they were improper."   <u>Id.</u> at p. 19 ¶ 102.   Mr. Kurtenbach seeks money damages against Director Clark, together with declaratory and injunctive relief against Attorney General Jackley and Secretary Daemingk.   <u>Id.</u> ¶ 103(a) & (b).   For the same reasons argued for dismissal of count 6, defendants seek dismissal of count 7.   (Docket 24 at pp. 22-23).

"Although a prisoner enjoys no constitutional right to remain in a particular institution, . . . and although generally prison officials may transfer a prisoner for whatever reason or for no reason at all, . . . a prisoner cannot be transferred in retaliation for the exercise of a constitutional right."   <u>Goff v. Burton</u>, 7 F.3d 734, 737 (8th Cir. 1993) (internal citations and quotation marks

omitted).  "A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline."  Haynes v. Stephenson, 588 F.3d 1152, 1155 (8th Cir. 2009) (quoting Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007)). The law is well-settled that filing a grievance is a constitutionally protected First Amendment activity.  Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007).  See Haynes, 588 F.3d at 1156 (stating that, regardless whether reclassifying an inmate or moving the inmate to a different cell constitutes "discipline," the very filing of a disciplinary charge amounts to discipline that "'is actionable under section 1983 if done in retaliation.' " (quoting Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989))).

"[A] supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." Burris v. Quorum Court of Lincoln County, Arkansas, No. 5:07-CV-087, 2008 WL 4820563, at *8 (E.D. Ark. Nov. 4, 2008) (internal quotation marks omitted) (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)).

To demonstrate a supervisor violated a plaintiff's constitutional rights by failing to supervise, a plaintiff must show that the supervisor "(1) Received notice of a pattern of unconstitutional acts committed by subordinates; (2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) Failed to take sufficient remedial action; and (4) That such failure

proximately caused injury [to the plaintiff]." Id. (internal quotation marks omitted) (quoting Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997)). "The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. . . . This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Andrews, 98 F.3d at 1078 (citations omitted).

Plaintiff's amended complaint fails to identify any state employee directly involved in the alleged retaliatory conduct. A generalized statement that the actions of others were directed or approved by Director Clark is insufficient to create a viable cause of action. The court finds count 7 fails to state a cause of action against Director Clark.

Count 7 fails to state a viable claim against Attorney General Jackley or Secretary Daemingk, and a generalized claim that they are failing to properly train or supervise their subordinates constitutes mere speculation. Defendants' motion to dismiss count 7 against Attorney General Jackley and Secretary Daemingk is granted.

## ORDER

Based on the above analysis, it is

IT IS ORDERED that defendants' motion to dismiss (Docket 23) is granted in part and denied in part.

IT IS FURTHER ORDERED that defendants' motion to dismiss count 1 of the amended complaint against AAG Quasney is denied.

IT IS FURTHER ORDERED that defendants' motion to dismiss count 1 of the amended complaint against Attorney General Jackley is denied.

IT IS FURTHER ORDERED that defendants' motion to dismiss count 2 of the amended complaint against Mr. Wenande is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss count 2 of the amended complaint against Attorney General Jackley is denied without prejudice.  If plaintiff intends to pursue a constitutional challenge to SDCL Title 34, Chapter 20e, he must comply with Fed. R. Civ. P. 5.1 on or before **April 13, 2018**.

IT IS FURTHER ORDERED that defendants' motion to dismiss count 3 of the amended complaint is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss count 4 of the amended complaint is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss count 5 of the amended complaint is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss count 6 of the amended complaint is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss count 7 of the amended complaint is granted.

Dated March 29, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE